IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01345-ZLW-CBS

RALPH LEFTHANDBULL,
        Plaintiff,
v.

STEVE HARTLEY,
DENNIS MCKENNA,
JOHN "SMOKEY" KURTZ,
R. STEINBECK,
TR[E]VOR WILLIAMS,
JUAN MARTINEZ,
TIMOTHY RITTER,
P. SCHAUF[L]ER,
L. WATKINS,
KEN MOORE,
LEONARD VIGIL,
KRISTI MOORE, and
RODNEY D. FOURACRE,
        Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on the Motion to Dismiss filed by

Defendants Hartley, McKenna, Kurtz, Steinbeck, Williams, Ritter, Schaufler, Watkins,

and Moore on November 5, 2009 (doc. # 24).[1]  Pursuant to the August 19, 2009 Order

of Reference and the memorandum dated November 4, 2009 (doc. # 25), this matter

was referred to the Magistrate Judge.  The court has reviewed the Motion, the

_____

        [1]        Defendants Leonard Vigil and Rodney D. Fouracre, as well as Mr.
Lefthandbull's request for declaratory relief, were dismissed by the court on August 17,
2009.  (*See* "Order to Dismiss in Part and to Draw Case to a District Judge and to a
Magistrate Judge" (doc. # 13)).

pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

Plaintiff Mr. Lefthandbull filed his initial Prisoner Complaint on or about June 9, 2009.  (*See* doc. # 3).  At the court's direction (*see* doc. # 8), Mr. Lefthandbull filed his Amended Prisoner Complaint ("AC") on August 3, 2009.  (*See* doc. # 10).

Mr. Lefthandbull brings his AC pursuant to 42 U.S.C. §1983, which creates a cause of action where a  "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution."  (*See* AC (doc. # 10) at p. 6 of 15).  Mr. Lefthandbull alleges violation of his Fourteenth Amendment rights to due process and equal protection.  (*See id.* at pp. 6, 9-10, 15 of 15).  At all times relevant to his claims, Mr. Lefthandbull was incarcerated in the Arkansas Valley Correctional Facility ("AVCF") and the Colorado State Penitentiary ("CSP") of the Colorado Department of Corrections ("CDOC").  In the AC, Mr. Lefthandbull alleges that in November 2004 he was removed from general population at AVCF and placed in administrative segregation for suspicion of murder of another inmate, that he was convicted of murder following a prison disciplinary hearing, and that he was reclassified to administrative segregation following the disciplinary conviction.  (*See* AC (doc. # 10) at pp. 7-8 of 15).  Mr. Lefthandbull alleges that he was cleared as a murder suspect in April 2008, following DNA testing done in May 2007.  (*See id.* at p. 8 of 15).  Mr. Lefthandbull alleges that he was retained

in administrative segregation after a new administrative segregation hearing.  (*See id.* at

p. 8 of 15 ¶¶ 15-16).  Mr. Lefthandbull alleges that he was denied due process when he

was removed from the general population, at his disciplinary hearing, when his

disciplinary hearing was upheld on appeal, and at his subsequent administrative

segregation hearing.  (*See id.*).  Mr. Lefthandbull seeks compensatory damages,

punitive damages, and injunctive relief in the nature of "a Restraining Order for the

Defendants to keep him at the Limon Correctional Facility for the entirety of the

Complaint, and against any retaliation for filing complaint."   (*See* AC (doc. # 10) at p. 15

of 15).[2]


II.     Defendants' Motion to Dismiss

A.      Standard of Review

         Defendants move to dismiss the AC pursuant to Fed. R. Civ. P. 12(b)(6) for

failure to state a claim upon which relief can be granted and Fed. R. Civ. P. 12(b)(1) for

lack of subject matter jurisdiction.

         To withstand a motion to dismiss under Rule 12(b)(6), a complaint must contain

enough allegations of fact "to state a claim to relief that is plausible on its face."  *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The burden is on the plaintiff to

frame "a complaint with enough factual matter (taken as true) to suggest" that he or she

is entitled to relief.  *Twombly*, 550 U.S. at 556.  "Factual allegations must be enough to

_____

         [2]       Mr. Lefthandbull also recites allegations against "defendant Trujillo."  (*See*
AC (doc. # 10) at p. 9 of 15 ¶¶ 19, 24, p. 14 of 15 ¶ 2, p. 15 of 15 ¶¶ 5, B.2.).  However,
no Defendant Trujillo has been named or served in the case.

raise a right to relief above the speculative level." *Id.* at 555.

Defendants' assertion of Eleventh Amendment immunity constitutes a challenge to the allegations of subject matter in the AC. Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). "A determination of the district court's subject matter jurisdiction is a question of law." *Madsen v. U.S. ex rel. U.S. Army Corps. of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). "If a Rule 12(b)(1) motion to dismiss merely challenges the sufficiency of the allegations in the complaint, the court must accept those allegations as true, but without regard to mere conclusionary allegations of jurisdiction." *American Fair Credit Ass'n v. United Credit Nat. Bank*, 132 F. Supp. 2d 1304,1308-09 (D. Colo. 2001) (internal quotation marks and citations omitted). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

The primary distinction between the court's analysis of a 12(b)(1) motion, as distinguished from a 12(b)(6) motion, is that under certain conditions, the court may consider evidence in deciding a 12(b)(1) motion. Here, this is a distinction without a difference as the Defendants rely solely upon the allegations in the AC, which is verified. Thus, the court need look no further than the allegations in the AC to decide the issue.

Because Mr. Lefthandbull appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

On November 5, 2009, the court directed Mr. Lefthandbull to file any response to the Motion to Dismiss on or before December 4, 2009. (*See* Minute Order (doc. # 26)). Mr. Lefthandbull's copy of the Minute Order was mailed to his current address of record with the court and was not returned to the court in the mail as undeliverable. As of this date, Mr. Lefthandbull has not filed any response to the Motion to Dismiss. "[A] district court may not grant a motion to dismiss for failure to state a claim 'merely because [a party] failed to file a response.' " *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir.

2003) (quoting *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002)). "This is consistent with the purpose of Rule 12(b)(6) motions as the purpose of such motions is to test the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Issa*, 354 F.3d at 1177-78 (internal quotation marks and citations omitted). "[E]ven if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Issa*, 354 F.3d at 1177-78 (internal quotation marks and citations omitted).

B.      Analysis

1.      Liability under § 1983 of Defendants in their Official Capacities

It is not clear whether Mr. Lefthandbull is suing Defendants in their individual capacities, their official capacities, or both. (*See* AC (doc. # 10)). To the extent that Mr. Lefthandbull may be suing Defendants in their official capacities, he is actually attempting to impose liability on their employer, the State of Colorado. *See Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) ("[a] judgment against a public servant in his official capacity imposes liability on the entity he represents"); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself"). The Eleventh Amendment provides: "[t]he Judicial power

of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Absent considerations not present in this case, the Eleventh Amendment forbids a suit for damages against a state in federal court. *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). Thus, to the extent that Mr. Lefthandbull is suing the Defendants in their official capacities for money damages, such a claim is properly dismissed as barred by the Eleventh Amendment. *Edelman*, 415 U.S. at 663.

In addition to monetary damages, Mr. Lefthandbull seeks what may constitute prospective injunctive relief "to a Restraining Order for the Defendants to keep him at the Limon Correctional Facility for the entirety of the Complaint, and against any retaliation for filing complaint." (*See* AC (doc. # 10) at p. 15 of 15). The court has already dismissed Mr. Lefthandbull's request for declaratory relief because his claims arose at AVCF and CSP, where he is no longer incarcerated, none of the Defendants are located at the prison where he is currently incarcerated, and the most recent alleged denial of due process occurred in April 2008. (*See* "Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge" (filed August 17, 2009) (doc. # 13)). Defendants, none of whom are employed at the Limon Correctional Facility, are under no obligation to provide the injunctive relief sought. Further, Mr. Lefthandbull possesses no liberty interest in residing in any particular prison. "It is well-established that an inmate has no justifiable expectation that he will be incarcerated in any particular prison. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). *See also Sandin v. Conner*,

515 U.S. 472, 479 (1995) (noting Federal Bureau of Prisons has the discretion to transfer inmates to alternative facilities "for whatever reason or for no reason at all.") (internal quotation marks and citation omitted). To the extent that Mr. Lefthandbull seeks injunctive relief, such a claim is properly dismissed.

2.      Liability under § 1983 of Defendants in their Individual Capacities

The Eleventh Amendment does not bar actions for damages against state officials in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 164 (1985). To the extent that Mr. Lefthandbull is suing Defendants in their individual capacities, personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law. *Graham*, 473 U.S. at 165-67. Mr. Lefthandbull alleges violation of his due process and equal protection rights under the Fourteenth Amendment rights based on his placement in administrative segregation and his disciplinary conviction in November 2004, and his retention in administrative segregation in 2008. (*See* AC (doc. # 10) at pp. 7-10, 15 of 15).

a.      Statute of Limitations

Defendants argue that Mr. Lefthandbull's claims are barred by the statute of limitations. To determine the timeliness of a claim under § 1983, federal courts must look to the applicable state statute of limitations. *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993). Colorado law provides a two-year statute of limitations for actions brought pursuant to § 1983. *See* Colo. Rev. Stat. § 13-80-102(g) (establishing a two-

8

year limitation period for "all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "all other actions of every kind for which no other period of limitation is provided"); *Blake*, 997 F.2d at 750 (applying § 13-80-102 to § 1983 claim).

The determination of when a § 1983 action accrues is controlled by federal rather than state law. *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) (citation omitted). "Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). *See also Industrial Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994) ("The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of injury which is the basis of his action.") "[I]t is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue." *Baker v. Board of Regents of State of Kansas*, 991 F.2d 628, 632 (10th Cir. 1993).

A prisoner's *pro se* complaint alleging a § 1983 action against state prison officials is treated as filed with the court on the date the prisoner gave it to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 271 (1988). Mr. Lefthandbull executed the initial complaint on May 27, 2009. (*See* doc. # 3 at p. 12 of 27). Other than Mr. Lefthandbull's claim challenging his continued administrative segregation placement in April 2008, all of his claims arise from conduct that he alleges occurred in November 2004, more than two years before he initiated this civil action and outside the statute of limitations. (*See* AC at pp. 7-8 of 15). Mr. Lefthandbull has not

argued that his claims based on conduct occurring in November 2004 had not yet accrued. *See Hunt*, 17 F.3d at 1266 ("Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action."). Thus, under Colorado's applicable two-year statute of limitations provision, Mr. Lefthandbull's claims that arise from conduct that he alleges occurred in November 2004 appear to be barred by the statute of limitations.

As an affirmative defense, the statute of limitations may be subject to certain defenses such as waiver, estoppel, or equitable tolling. *See Rotella v. Wood*, 528 U.S. 549, 560 (2000) (federal statutes of limitations "are generally subject to equitable principles of tolling"). However equitable tolling is employed as an "exception, not the rule." *Rotella*, 528 U.S. at 561. The issue of tolling, like the statute of limitations, is governed by Colorado state law. *Hardin v. Straub*, 490 U.S. 536, 539 (1989); *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). "Once the statute of limitations is raised as an affirmative defense, the burden shifts to the plaintiff to show that the statute has been tolled." *Overheiser v. Safeway Stores, Inc.*, 814 P.2d 12, 13 (Colo. App. 1991). Under Colorado law, there are two circumstances where equitable tolling may apply. The doctrine of equitable tolling "permits the statute of limitations to be tolled only where the defendant's wrongful conduct prevented the plaintiff from asserting the claims in a timely manner or truly exceptional circumstances prevented the plaintiff from filing the claim despite diligent efforts." *Morrison v. Goff*, 74 P.3d 409, 412-13 (Colo. App. 2003) (citation omitted). *See also Sandoval v. Archdiocese of Denver*, 8 P.3d 598, 604-05 (Colo. App. 2000) ("[i]n order for a statute of limitations to be tolled because of equitable considerations, it is the plaintiff's burden to establish that the defendant's actions

prevented her from filing a timely claim.") (citation omitted).  Mr. Lefthandbull has not argued any basis for equitable tolling.

"At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute."  *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n. 13 (11th Cir. 2005) (internal quotation marks and citations omitted).  *See also United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (complaint may be dismissed where the "allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations") (citation omitted); *Bullington v. United Air Lines Co.*, 186 F.3d 1301, 1310 n. 3 (10th Cir. 1999) (noting "that Rule 12(b)(6) is a proper vehicle for dismissing a complaint that, on its face, indicates the existence of an affirmative defense such as noncompliance with the limitations period") (citation omitted), *implicitly overruled on other grounds as recognized by Boyer v. Cordant Technologies*, 316 F.3d 1137, 1140 (10th Cir. 2003).  Other than his claim challenging his continued administrative segregation placement in April 2008, Mr. Lefthandbull's own allegations indicate that his claims arose from conduct that occurred in November 2004. Mr. Lefthandbull's allegations plainly support dismissal of all of his claims as barred by the statute of limitations, except the claim challenging his continued administrative segregation placement in April 2008.

b.      The Prison Litigation Reform Act, 42 U.S.C. § 1997e(e)

Defendants argue that Mr. Lefthandbull's claim for compensatory damages must

be dismissed for failure to state a claim because he has not alleged that he suffered any physical injury, which is a requirement under the Prison Litigation Reform Act ("PLRA") for an inmate to bring a federal claim for monetary damages. 42 U.S.C. § 1997e(e). *See also Perkins v. Kansas Dept. Corrections*, 165 F.3d 803, 807 (10th Cir. 1999).

Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted. *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (applying section 1997e(e) to First Amendment claim for free exercise of religion). Although section 1997e(e) bars recovery of mental or emotional injury damages absent an allegation of physical injury, it does not bar recovery of punitive damages, declaratory relief, or nominal damages. *Id.* at 881 (noting that "Congress simply did not choose to provide a restriction on punitive damages").

Mr. Lefthandbull's allegations do not meet the "physical injury" requirement of § 1997e(e). Mr. Lefthandbull has not alleged physical injuries; rather, he alleges only "mental anguish," "emotional duress," "mental . . . pain and suffering," and "psychological injury." (*See* AC (doc. # 10) at p. 15 of 15). "[A]lthough claims for mental and emotional distress can be brought pursuant to § 1983, . . . § 1997e(e) provides that 'such a suit cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.'" *Turner v. Schultz*, 130 F. Supp. 2d 1216, 1222-23 (D. Colo. 2001) (quoting *Perkins*, 165 F.3d at 807). As Mr. Lefthandbull has not alleged any physical injury, his claim for compensatory damages is properly dismissed pursuant to §

12

1997e(e).

     c.    *Heck v. Humphrey*

Defendants argue that Mr. Lefthandbull's claims are barred under *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994) ("a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated") and *Edwards v. Balisok*, 520 U.S. 641, 643-47 (1997) (prisoner could not bring § 1983 claim until disciplinary decision overturned where prisoner alleged defects in hearing resulting in administrative segregation and revocation of good-time credits).

*Heck* and *Balisok* limit only challenges to the fact or duration of a prisoner's sentence, not the conditions of his confinement. *See Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006) ("the favorable termination requirement is not intended to compel a prisoner to demonstrate that a sanction he seeks to challenge . . . has been invalidated before he can proceed under § 1983 when that sanction does not affect his term of confinement"), *cert. denied*, 127 S.Ct. 3006 (2007). Mr. Lefthandbull's only claim not barred by the statute of limitations is his challenge to his continued administrative segregation placement in April 2008. Such claim is considered a condition of confinement, could not invalidate any underlying conviction even if successful, and thus is not barred. *See Muhammad v. Close*, 540 U.S. 749, 751-55 (2004).[3]

---

    [3]    To the extent Mr. Lefthandbull may be alleging a loss of "earn time credits" (*see* AC (doc. # 10) at p. 8 of 15 ¶ 17), such a loss "does not deprive a prisoner of a constitutional right," *Twyman v. Crisp*, 584 F.2d 352, 356 (10th Cir. 1978), and Colorado law furnishes no such right. *See* Colo. Rev. Stat. § 17-22.5-301(4) ("Nothing in this

d.     Due Process Claim

Mr. Lefthandbull alleges deprivation of his liberty interest without due process in violation of the Fourteenth Amendment.  Defendants argue that Mr. Lefthandbull fails to state a claim for relief against them.

The necessary predicate to a due process claim is a deprivation of a protected interest.  *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'") (citing U.S. Const., amend. XIV ("nor shall any State deprive any person of life, liberty, or property, without due process of law")). Prisoners do not have a constitutionally recognized liberty interest in their security classification or placement.  *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration");  *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006) ("classification of a plaintiff into segregation does not involve deprivation of a liberty interest independently protected by the Due Process Clause") (quotation and alterations omitted).

However, in *Sandin v. Conner*, the Supreme Court held that administrative segregation may implicate a liberty interest protected by the Due Process Clause if it

_____

section shall be construed as to prevent the department from withholding good time earnable in subsequent periods of sentence, but not yet earned, for conduct occurring in a given period of sentence.");  *Rather v. Suthers*, 973 P.2d 1264, 1266 (Colo. 1999) (no constitutional right to good time credits and under Colorado law, good time credits apply only to determine parole eligibility, not a mandatory release date).  *See also Lusero v. Welt*, 223 Fed. Appx. 780, 784, 2005 WL 530291 at *43 (10th Cir. 2007) (under Colorado good time and earned time credit system, loss of good time credits does not give rise to a right to due process) (copy attached to this Recommendation).

"imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," 515 U.S. at 484, or if it "will inevitably affect the duration of his sentence." *Id.* at 487.  *See also Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) ("the Supreme Court held that a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' ") (quoting *Sandin*, 515 U.S. at 484). "[T]he touchstone of the inquiry . . . is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life."  *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (internal quotation marks and citation omitted).  Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination. . . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485-87).

The Tenth Circuit has identified relevant factors to consider when determining whether placement in administrative segregation implicates a protected liberty interest: (1) whether "the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) [whether] the conditions of placement are extreme; (3) [whether] the placement increases the duration of confinement . . . ; and (4) [whether] the placement is indeterminate."  *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007).  "[A]ny assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts."  *DiMarco*, 473 F.3d at 1342

15

(citation omitted).

Here, all of the relevant factors weigh against an enforceable liberty interest in Mr Lefthandbull's claim regarding continued administrative segregation placement in April 2008. Mr. Lefthandbull has not alleged any effect of his placement in administrative segregation on the duration of his sentence. (*See* AC (doc. # 10)). Nor is there any allegation of atypical or extreme conditions or how the conditions of his confinement differ in any way from those of other prisoners. *See Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (Tenth Circuit has explicitly held that "the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.") (internal quotation marks and citation omitted); *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996) ("In *Sandin*, the Court held that the plaintiff's discipline in segregated confinement was not the sort of atypical, significant deprivation that would give rise to a liberty interest entitled to due process protection.") (citation omitted). Mr. Lefthandbull's claim does not implicate a liberty interest, in that he makes no allegations regarding the conditions of administrative segregation, much less any allegation that the conditions are atypical or significant in relation to the ordinary incidents of prison life or constitute denial of access to any "basic essentials of life." *See Sandin*, 515 U.S. at 484; *DiMarco*, 473 F.3d at 1343 (inmate had access to the basic essentials of life, although her access to certain amenities was more limited than the general population); *Blum v. Federal Bureau of Prisons*, 189 F.3d 477 at * 3 (10th Cir. (Colo.) Aug. 23, 1999) (disciplinary segregation that left inmate "without store privileges, radio, phone calls, etc. that other inmates just being held in segregation had the privileges of" was "not different in such degree and

duration as compared with the ordinary incidents of prison life to be a protected liberty interest under the Due Process Clause") (internal quotation marks citations omitted); *McCoy v. Denning*, 2006 WL 1360121 at * 4 (D. Kan. May 17, 2006) (segregation where inmate allowed only "one visiting day, one hour of recreation, restricted commissary, no t.v., no radio, and other privileges that are restricted" did not allege conditions significantly more restrictive or atypical than "to be normally expected by one serving a jail term") (internal quotation marks and citation omitted).[4]

Mr. Lefthandbull does not allege that his placement in administrative segregation is indeterminate. Even if he had so alleged, due process requires no more than the review procedure that Mr. Lefthandbull alleges he has received. Mr. Lefthandbull acknowledges that periodic reviews of his administrative segregation status are conducted. (*See, e.g.*, AC (doc. # 10) at p. 6, p. 8 ¶¶ 11, 15-16; initial Complaint (doc. # 3) at pp. 18-21, 24-27 of 27). *See Jones v. Mabry*, 723 F.2d 590, 594 (8th Cir. 1983) (due process requires procedure for periodic review of administrative segregation status); *Kelly v. Brewer*, 525 F.2d 394, 400 (8th Cir. 1975) ("where an inmate is held in segregation for a prolonged or indefinite period of time due process requires that his situation be reviewed periodically in meaningful way . . ."); *Hunt v. Sapien*, 480 F. Supp. 2d 1271, 1277 (D. Kan.) (placement was not indefinite where reviewed weekly for the first 60 days, and subsequently reviewed monthly, after 180 days, and annually), *reconsideration denied*, 2007 WL 1520906 (D. Kan. 2007).

In sum, Mr. Lefthandbull's allegations based on his continued administrative

---

[4]    Copies of unpublished cases cited are attached to this Recommendation.

segregation placement in April 2008 do not state a valid claim.  The AC is devoid of facts regarding the nature of the continued detention that would be sufficient to suggest the sort of extreme conditions where courts have found the test of *Sandin* met.  Mr. Lefthandbull's allegations fail to rise to a condition that is sufficiently atypical or significant in relation to the ordinary incidents of prison life to implicate a liberty interest.[5]  In sum, Mr. Lefthandbull's claims for violation of his right to due process under the Fourteenth Amendment are properly dismissed for failure to state a claim upon which relief can be granted.

  e.  Equal Protection Claim

  Mr. Lefthandbull alleges a violation of his right to equal protection Fourteenth Amendment.  (*See* AC (doc. # 10) at pp. 6, 10 of 15).  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  "In order to sufficiently state an Equal Protection claim, a prisoner must show: (1) that he is treated differently than a similarly situated class of inmates, (2) that the different

---

[5]  To the extent that Mr. Lefthandbull may be alleging violation of prison policies in conducting the administrative proceedings, a prison official's "failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993).  *See also Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) ("To the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations, however, he has stated no cognizable claim under § 1983.") (citations omitted).

treatment burdens one of his fundamental rights, and (3) that the different treatment bears no rational relation to any legitimate penal interest." *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 984 (8th Cir. 2004) (internal quotation marks and citation omitted). The challenged disparate treatment must be the result of purposeful discrimination. *Harris v. McRae*, 448 U.S. 297, 323 n. 26, 100 S.Ct. 2671 (1980). *See also Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (to properly allege equal protection claim, a plaintiff must plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.").

Mr. Lefthandbull merely conclusorily alleges "deprivation of his rights to liberty and to be free and illegal restraints in violation of Equal Protection and the Due Process Clause of the United States Constitution" and that "the actions of defendants Watkins and Moore . . . denied plaintiffs due process rights to liberty by ordering that plaintiff be retained at CSP against his equal protection rights . . . ." (*See* AC (doc. # 10) at pp. 6, 10 of 15). Mr. Lefthandbull has not alleged that he is a member of a constitutionally protected class. Mr. Lefthandbull does not allege that he received different treatment than any other inmates. Mr. Lefthandbull has not identified any specific inmates, how they were similarly situated, or what more favorable treatment they received with regard to administrative segregation. "Absent a threshold showing that [he] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994). Mr. Lefthandbull's allegations are entirely conclusory and fail to state an Equal Protection claim.

f.    Qualified Immunity

To the extent that Mr. Lefthandbull is suing Defendants in their individual

capacities under § 1983, Defendants raise the defense of qualified immunity.  Whether

a defendant is entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490

F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229 (2008).

> Resolution of a dispositive motion based on qualified immunity involves a
> two-pronged inquiry. First, a court must decide whether the facts that a
> plaintiff has alleged or shown make out a violation of a constitutional right.
> Second, . . . the court must decide whether the right at issue was clearly
> established at the time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation

marks and citations omitted).  "A reviewing court may exercise [its] sound discretion in

deciding which of the two prongs of the qualified immunity analysis should be addressed

first in light of the circumstances in the particular case at hand."  *Id.* "Qualified immunity

is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.*  Having

concluded above that Mr. Lefthandbull has failed to state a claim for  violation the

Fourteenth Amendment, Defendants are entitled to qualified immunity from Mr.

Lefthandbull's § 1983 claims.


g.    Punitive Damages

Defendants further move to dismiss Mr. Lefthandbull's claim for punitive

damages.   While punitive damages are available in § 1983 actions, they "are to be

awarded only when 'the defendant's conduct is shown to be motivated by evil motive or

intent, or when it involves reckless or callous indifference to the federally protected

rights of others.'"  *Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992) (quoting *Smith v.*

*Wade*, 461 U.S. 30, 56 (1983)). "Punitive damages become a discretionary matter for the jury in a section 1983 action only if the plaintiff makes an adequate threshold showing." *Iacobucci v. Boulter*, 193 F.3d 14, 26-27 (1st Cir. 1999). That threshold showing "requires proof that the defendant acted 'in the face of a perceived risk that [his] actions [would] violate federal law.' " *Iacobucci*, 193 F.3d at 26 (quoting *Kolstad v. American Dental Ass.*, 527 U.S. 526, 536 (1999)).

Mr. Lefthandbull has not alleged any basis for an award of punitive damages. The lack of any allegation as to Defendants' evil motives or reckless indifference to his federally protected rights results in failure to state a claim upon which relief can be granted for punitive damages. Further, Mr. Lefthandbull's claim for punitive damages depends upon his Fourteenth Amendment claim, which the court recommends be dismissed for failure to state a claim.

III.     Defendants Juan Martinez and Ken Moore

Mr. Lefthandbull is proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915. (*See* June 25, 2009 "Order Granting Leave to Proceed Pursuant to 28 U.S.C. §1915" (doc. # 6)). Pursuant to the August 19, 2009 "Order Granting Service by United States Marshal" (doc. # 16), a Waiver of Service of Summons was filed with the court on April 21, 2009, indicating that "[t]here is no record of a 'Juan Martinez' having been employed by the DOC. There are over 100 employees with last name 'Martinez,' this defendant could not be identified" and that "[t]here is no record of a 'Ken Moore' having been employed by the DOC. There are over 20 employees with last name 'Moore,' this defendant could not be identified." (*See* doc. # 17). Based upon the information

available to the court, it does not appear that Defendants Juan Martinez or Ken Moore can be served at the address on record with the court. To date, neither Defendant Juan Martinez nor Ken Moore has filed with the Clerk of the Court a signed waiver of service or appeared in the case.

Fed. R. Civ. P. 4(m) provides that the court shall dismiss an action without prejudice as to any defendant who has not been served within 120 days of the filing of the action:

> "[i]f a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Defendants Juan Martinez and Ken Moore have been named as Defendants in this case since the filing of the initial Prisoner Complaint on June 9, 2009. Approximately ten months have passed since the filing of this civil action and the record before the court indicates that neither Defendant Juan Martinez nor Ken Moore has been served with a summons and complaint in this action.

While an incarcerated *pro se* plaintiff proceeding *in forma pauperis* is entitled to rely on the U.S. Marshal for service of the summons and complaint, there is no indication in this case that the U.S. Marshal or the court clerk have failed to perform their duties to serve Defendants Juan Martinez or Ken Moore. The court need not require the U.S. Marshal or the clerk of the court to search for or make any further attempts to serve Defendants Juan Martinez or Ken Moore. Sufficient time has been afforded and sufficient efforts have been made to serve Defendants Juan Martinez and

Ken Moore such that these Defendants may properly be dismissed for failure to effect service within the time limit of Fed. R. Civ. P. 4(m) and pursuant to D. C. COLO. LR 41.1 for failure to prosecute.

IV.   Failure to Comply with Court's Orders and Title 28 U.S.C. § 1915

By an Order entered on June 25, 2009, the court granted Mr. Lefthandbull leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (*See* doc. # 6). Pursuant to § 1915(b)(2), Mr. Lefthandbull is required to make monthly payments of twenty percent (20%) of the preceding month's income credited to his prison trust account until the filing fee is paid in full. (*See id.*). Mr. Lefthandbull was instructed either to make the required monthly payments or to show cause each month why he has no assets and no means by which to make the monthly payment. (*See* doc. # 6). In order to show cause, Mr. Lefthandbull was directed to file a certified copy of his inmate trust account statement. (*See* doc. # 6). Mr. Lefthandbull was warned that a failure to comply with the requirements of § 1915(b)(2) would result in the dismissal of this civil action. (*See* doc. # 6).

On November 3, 2009, the court ordered Mr. Lefthandbull to make the required monthly filing fee payments for the months of July, August, September, and October of 2009 or to show cause for his inability to pay. (*See* "Order to Show Cause" (doc. # 23)). The court warned Mr. Lefthandbull that failure to comply with the Order to Show Cause may result in dismissal of this civil action without further notice. (*See* doc. # 23). Mr. Lefthandbull's copy of the Order to Show Cause was mailed to his current address on record with the court and was not returned to the court in the mail as undeliverable. As

of this date, Mr. Lefthandbull has not filed any response to the Order to Show Cause.

The court has advised Mr. Lefthandbull that he is required to make monthly payments of twenty percent (20%) of the preceding month's income credited to his trust fund account or show cause each month why he has no assets and no means by which to make the monthly payment. Since the commencement of this action on or about June 9, 2009, Mr. Lefthandbull once filed a copy of his inmate trust account statement on June 22, 2009 at the court's specific direction (*see* docs. # 2, # 5) and made one initial partial payment of $8.00 on July 6, 2009 at the court's specific direction. (*See* docs. # 6, # 7). Mr. Lefthandbull has not made monthly partial filing fee payments or submitted his inmate trust account statements in lieu of making monthly partial filing fee payments for the months of July through December 2009 and January through April 2010. Mr. Lefthandbull has failed to comply with court Orders directing him to make the required monthly payments or to show cause each month why he has no assets and no means by which to make the monthly payments. It is not acceptable for Mr. Lefthandbull to disregard his monthly filing fee obligations and court Orders. This civil action may also properly be dismissed for Mr. Lefthandbull's failure to comply with the court's orders and Title 28 U.S.C. § 1915.

Accordingly, IT IS RECOMMENDED that:

1.      The Motion to Dismiss filed Defendants Hartley, McKenna, Kurtz, Steinbeck, Williams, Ritter, Schaufler, Watkins, and Moore on November 5, 2009 (doc. # 24) be GRANTED and Defendants Steve Hartley, Dennis McKenna, John "Smokey" Kurtz, R. Steinbeck, Trevor Williams, Timothy Ritter, P. Schaufler, L. Watkins, and Kristi

Moore be dismissed from this civil action in their official and individual capacities based on Mr. Lefthandbull's failure to state a claim for violation of his due process or equal protection rights under the Fourteenth Amendment, for declaratory or injunctive relief, for compensatory damages, or for punitive damages.

2.    Defendants Juan Martinez and Ken Moore be dismissed from this civil action for failure to effect service within the time limit of Fed. R. Civ. P. 4(m) and pursuant to D.C. COLO. LCivR 41.1 for failure to prosecute.

3.    In the alternative, this civil action be dismissed for Mr. Lefthandbull's failure to comply with the court's orders and Title 28 U.S.C. § 1915.

4.    No Defendants remaining in the case, this civil action be DISMISSED in its entirety.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely

objections may bar *de novo* review by the District Judge of the Magistrate Judge's

proposed findings and recommendations and will result in a waiver of the right to appeal

from a judgment of the district court based on the proposed findings and

recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80

(10th Cir. 1999) (District Court's decision to review a Magistrate Judge's

recommendation *de novo* despite the lack of an objection does not preclude application

of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's

objections to the Magistrate Judge's report and recommendation must be both timely

and specific to preserve an issue for *de novo* review by the District Court or for

appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining

Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions

of the Magistrate Judge's order, cross-claimant had waived its right to appeal those

portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by

their failure to file objections, plaintiffs waived their right to appeal the Magistrate

Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir.

2005) (firm waiver rule does not apply when the interests of justice require review).

     DATED at Denver, Colorado this 20th day of April, 2010.

     BY THE COURT:

     Craig B. Shaffer
     United States Magistrate Judge